1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID JAH, SR.,

                Petitioner,

    v.

WARDEN, FCI VICTORVILLE, MED. 1,

                Respondent.

Case No. 5:23-cv-01748-CAS-PD

**ORDER TO SHOW CAUSE WHY THE PETITION SHOULD NOT BE DISMISSED**

      On August 25, 2023, David Jah, Sr. ("Petitioner"), a federal prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241 ("Petition") and an "Affidavit in Support of 28 U.S.C. § 2241" ("Affidavit"). [Dkt. Nos. 1, 2.]

      On September 22, 2023, Petitioner filed a "Rule 60(b) Motion for Relief from a Final Judgment." [Dkt. No. 6.]

## I.    Background and Petitioner's Claims

      Petitioner is presently housed at the Federal Correctional Institution at Victorville-Medium I ("FCI Victorville"), which is within the Central District of California. [Dkt. No. 1.] He is serving a sentence of 18-years for conspiracy

1  to commit arson that was imposed in 2021 in the United States District Court

2  for the Northern District of California in the matter of *United States v. David*

3  *Jah*, 3:19-cr-00026-WHA-1.[1]

4      Petitioner asserts claims for deliberate indifference to his serious

5  medical needs under the Eighth Amendment and violation of his equal

6  protection and due process rights under the Fifth and Fourteenth

7  Amendments.  [Dkt. No. 1 at 3-4, 6-7.]  Petitioner seeks injunctive relief and

8  requests that the Court order the Bureau of Prisons Director to:

9  (1) temporarily release him to a re-entry center, halfway house, or home

10  confinement; (2) allow for Petitioner's conditional release to include safe

11  drinking water and medical care as needed; and (3) assure that all of

12  Petitioner's legal work is kept with him to prevent misplacement.  [*Id.* at 8.]

13      Petitioner alleges that FCI Victorville is on a site known to be

14  contaminated by various toxins that are present in the ground water,

15  aquifers, and supply wells.  [*Id.* at 2.]  In February 2023, the Director,

16  Warden, and all staff were made aware of the City of Adelanto's water report

17  notifying the public that the total trihalomethanes ("TTHMs") level present in

18  Adelanto's water was 189 times above the Environmental Working Group

19  health guidelines.  [*Id.*]  Petitioner alleges that accounts of debilitating

20  medical problems "abound among those who lived and worked at George Air

21  Force Base [which was on the site prior to the prison being built]," and also

22  those incarcerated at the prison, including "organ failures, such as vision loss

23  … with knowledge that exposure to the harsh desert sunlight can cause

24  cataracts, macular degeneration, ocular cancer, … and various medical

25  problems."  [*Id.*]

26  _____

[1]  Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial
27  notice of the federal dockets and filings available through the PACER system.  *See
also Harris v. County of Orange*, 682 F. 3d 1126, 1131-32 (9th Cir. 2012) (noting that
28  a court may take judicial notice of court records).

2

Petitioner alleges that he requested a voucher or two cases of bottled water from his Unit Manager Mr. Villegas, or that alternatively, a filter be installed in his cell to purify the water.  [*Id.*]  According to Petitioner, the Bureau of Prisons Director has knowledge of the water problems and "has not provided adequate drinking water in bottles except for purchase at currently $1.30 which amounts to $62.40 a week" for the amount of water health professionals recommend for Petitioner's body mass.  [*Id.*]  In addition, the Director has not provided filters at the water stations in the prison.  [*Id.*]

Petitioner suffers from blurry vision and macular edema and informed the medical department of his conditions in March 2023.  [Dkt. Nos. 1 at 4; 2 at 1.]  He was promised an appointment with an ophthalmologist and gastroenterologist approximately six months prior to filing his action.  [Dkt. No. 1 at 4.]  Every two weeks, Petitioner has made a sick call visit to inquire when his doctors' appointments will be scheduled and to update the medical staff of his increasing symptoms.  [*Id.*]  The medical staff informed him there was no medical doctor employed at the prison that could see him, but an outside appointment would occur "sooner [rather] than later" with no exact time frame provided. [*Id.*]

Petitioner alleges that in February 2023, unknown persons searched his cell and confiscated his personal property which included the water report that described the water contamination.  [Dkt. No. 2 at 1.]  In March 2023, Petitioner alleges that he requested a BP-8 grievance form, along with the names of the unknown persons who searched his cell and confiscated his property.  He never received the BP-8 or his property, or access to a water filter or bottled water without cost.  [*Id.*]

Petitioner further alleges that in April 2023, while he was talking to his family about his medical problems, Mr. Villegas without warning, used his hands to hang up Petitioner's phone call and demanded that he go to the

3

back-office area in the hallway where the counselors are located.  [*Id*.]
Petitioner felt threatened.  [*Id*.]  Petitioner asked for a BP-9 so he could file a
grievance against Mr. Villegas and was told that if he is given a BP-9 he will
miss any court deadlines due to being placed in the "SHU and [his] mail will
be misplaced."  [*Id*.]  Because of Mr. Villegas' past actions, Petitioner took his
threats seriously and did not ask for a BP-9.  [*Id*. at 2.]

In May 2023, Petitioner's legal mail from the United States Supreme
Court was opened and copied outside his presence.  [*Id*.]  In June 2023,
Petitioner was examined by medical and was "told blood was noticed" and
that he could not be prescribed bottled water.  [*Id*.]  He claims between July
and August 2023, he submitted several sick call slips. [*Id*.]
According to public records, Petitioner's projected release date is April 20,
2034.  *See* Fed. R. Evid. 201; Federal Bureau of Prisons Inmate Locator,
https://www.bop.gov/inmateloc (accessed September 28, 2023).

## II.   DISCUSSION

### A.   Duty to Screen the Petition

A habeas petition brought under 28 U.S.C. § 2241 is subject to the same
screening requirements that apply to habeas petitions brought under 28
U.S.C. § 2254.  *See* Rules Governing Section 2254 Cases in the United States
District Courts ("Habeas Rules"), Rule 1(b) (providing that district courts may
apply the Habeas Rules to habeas petitions that are not brought under 28
U.S.C. § 2254).  Accordingly, a district court "must promptly examine" the
petition and, "[i]f it plainly appears from the petition and any attached
exhibits that the petitioner is not entitled to relief," the "judge must dismiss
the petition."  Habeas Rule 4; *Mayle v. Felix*, 545 U.S. 644, 656 (2005); *Lane v.
Feather*, 584 F. App'x 843, 843 (9th Cir. 2014) (affirming district court's
application of Habeas Rule 4 to dismiss Section 2241 petition).  The Court has

4

reviewed the Petition under Rule 4 of the Habeas Rules and finds the Petition is subject to dismissal for the reasons explained below.

### B. Petitioner's Claims Are Not Cognizable on Habeas Review

"Federal law opens two main avenues to relief on complaints related to imprisonment"—a petition for habeas corpus and a civil rights complaint. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). Relief in the form of a writ of habeas corpus may be granted to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). In general, habeas proceedings provide a forum in which to challenge the "legality or duration" of a prisoner's confinement. *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979) (as amended); *see also Nettles v. Grounds,* 830 F.3d 922, 927, 934 (9th Cir. 2016) (en banc) (habeas is "the exclusive vehicle" for claims that fall within "the core of habeas corpus," that is, claims challenging "the fact or duration of the conviction or sentence"). By contrast, a civil rights action is the "proper remedy" for a petitioner asserting "a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973); *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of [the] core" of habeas corpus and instead, should be brought as a civil rights action "in the first instance"); *Greenhill v. Lappin*, 376 F. App'x 757 (9th Cir. 2010) (appropriate remedy for claim related to the conditions of confinement lies in a civil rights action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)). Thus, if success on a habeas Petitioner's claim would not necessarily lead to his immediate or earlier release from confinement, the claim does not fall

within "the core of habeas corpus" and thus, must be pursued, if at all, in a civil rights action.  *See Nettles*, 830 F.3d at 935; *see also Ramirez v. Galaza,* 334 F.3d 850, 859 (9th Cir. 2003).

Here, Petitioner does not contest his conviction or sentence.  Instead, he complains that he was not provided with bottled water or a filter, that he did not receive adequate medical care, that medical staff were deliberately indifferent to his serious medical needs, and that he received threats of retaliation because he asked for a grievance form.  [Dkt. Nos. 1 at 2-4, 6-7; 2 at 1-2.]  These are classic conditions of confinement claims that do not implicate the fact or duration of Petitioner's confinement.  *See Nettles,* 830 F.3d at 933 (explaining that "prisoners may not challenge mere conditions of confinement in habeas corpus").

Although Petitioner requests relief in the form of temporary release to home confinement, a halfway house, or a re-entry center [Dkt. No. 1 at 8], which is within the ambit of a writ of habeas corpus, Petitioner's claims challenge the conditions of his confinement and are properly the subject of a civil rights complaint, despite the relief he seeks.  *Shook v. Apker*, 472 F. App'x 702, 702-03 (9th Cir. 2012) (finding claims on conditions of confinement were properly brought under *Bivens* despite the relief sought); *see, e.g., Allah v. Warden*, No. CV 17-05201 AG (RAO), 2017 U.S. Dist. LEXIS 145293, at *4-5 (C.D. Cal. Aug. 31, 2017) (concluding that *Bivens* was the appropriate vehicle for a petitioner's challenges to conditions of confinement, "even if petitioner had requested release from custody or some other appropriate habeas relief"); *Bolden v. Ponce*, No. CV 20-3870-JFW (MAA), 2020 WL 2097751, at *2 (C.D. Cal. May 1, 2020) (holding that the petitioner's challenge to the conditions of his confinement during the COVID-19 pandemic should have been asserted in a civil rights complaint and not a habeas action, despite his request for immediate release).  Because Petitioner admittedly does not

6

challenge his conviction or sentence, Section 2241 is not the proper vehicle for Petitioner's claims.[2]

### C. The Court Declines to Construe the Petition as a Civil Rights Complaint

In some circumstances, a district court may convert an improperly filed habeas petition into a civil rights complaint. *See Nettles*, 830 F.3d at 935-36. The Court, however, declines to do so in this case. Prisoner civil rights actions are subject to different requirements (and higher filing fees) than are federal habeas proceedings. Indeed, the congressionally mandated filing fee for a prisoner civil rights complaint is currently $350.00 in contrast to the $5.00 filing fee for habeas petitions. *See* 28 U.S.C. § 1914(a). And, while a civil rights action may proceed despite the prisoner's inability to prepay the entire $350.00 if he is granted leave to proceed in forma pauperis ("IFP") under 28 U.S.C. § 1915(a), he must still agree to pay the entire filing fee in installments, even if his complaint is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1)-(2).

---

[2] To the extent that the Petition can be construed as a disguised motion for compassionate release, it is not properly before this Court. Under 18 U.S.C. § 3582(c)(1)(A), all motions for sentencing reductions, including motions for compassionate release, must be filed in the sentencing court. *See United States v. Ono*, 72 F.3d 101, 102 (9th Cir. 1995) (a motion under Section 3582(c) "is undoubtedly a step in the criminal case" that "requires the [sentencing] court to reexamine the original sentence" (citation omitted)); *see also United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) ("Section 3582's text requires those motions to be addressed to the sentencing court, a point several Circuits have noted . . . ."); *Bolden,* 2020 WL 2097751, at *2 (finding district court lacks authority to grant release under § 3582(c)(1)(A) based on conditions caused by COVID-19 pandemic because petition was not filed in sentencing court); *Mitchell v. Engleman*, No. CV 21-06488-JWH (JEM), 2021 WL 4641945, at *1 (C.D. Cal. Sept. 9, 2021) (same); *Thody v. Swain*, No. CV 19-09641-PA (DFM), 2019 WL 7842560, at *2 (C.D. Cal. Nov. 26, 2019) ("[B]y its plain language, 18 U.S.C. § 3582(c)(1)(A) requires Petitioner to move for reduction in the sentencing court.").

Here, Petitioner has not paid the fee to file a civil rights action. In addition, the Court would be obligated to screen the converted Petition under 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether the action is frivolous or malicious; or fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief. The Court also notes that if the converted Petition was ultimately dismissed on the grounds that it is frivolous, malicious, or fails to state a claim, that dismissal would count as a "strike" against Petitioner for purposes of 28 U.S.C. § 1915(g), which provides that a prisoner who has three "strikes" may not bring an action or appeal without prepayment of the full filing fee "unless the prisoner is under imminent danger of serious physical injury." Accordingly, if Petitioner seeks to pursue any civil rights claim, he must do so by filing a separate civil rights complaint in a new action.

### D. The Rule 60(b) Motion

Petitioner has also filed a Rule 60(b) Motion alleging a claim of actual innocence relating to his conviction and sentence in the United States District Court for the Northern District of California. [Dkt. No. 6.] Petitioner's Rule 60(b) Motion raises issues and claims unrelated to the instant Section 2241 Petition and Affidavit. [*See* Dkt. Nos. 1, 2.] To the extent that Petitioner seeks relief under Rule 60(b), his Motion is not properly brought before this Court.

## III. ORDER

For the foregoing reasons, the Petition is subject to dismissal. Petitioner is therefore ORDERED TO SHOW CAUSE why this action should not be dismissed without prejudice by filing a written response by no later than **November 9, 2023**, which sets forth any valid legal and/or factual reasons why the Petition should not be dismissed.

If, after review of this Order, Petitioner should decide not to further pursue this action at this time, Petitioner may voluntarily dismiss the action by signing and returning the attached Notice of Dismissal under Federal Rule of Civil Procedure 41(a).

Petitioner is cautioned that the failure to timely respond to this Order will result in this action being dismissed for the reasons explained above, for failure to prosecute, and for failure to comply with a Court order. *See* Fed. R. Civ. P. 41(b).

DATED: October  13, 2023

*PATRICIA DONAHUE*
PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE